## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Leda Dunn Wettre |
| | : | |
| v. | : | Mag. No. 21-13120 |
| | : | |
| ERIC BULLARD | : | **Criminal Complaint** |
| | : | |

I, Dustin Doyle, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached pages and made a part hereof:

_____
Special Agent Dustin Doyle
Federal Bureau of Investigation

Attested to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1(b)(2)(A) on March 18, 2021, in the District of New Jersey.

HONORABLE LEDA DUNN WETTRE      _____
UNITED STATES MAGISTRATE JUDGE     Signature of Judicial Officer

1

## ATTACHMENT A
**Money Laundering Conspiracy**

From at least as early as in or about June 2020 through in or about August 2020, in Bergen County, in the District of New Jersey, and elsewhere, the defendant,

ERIC BULLARD,

did knowingly and intentionally conspire and agree with others to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, namely, wire fraud, while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

## ATTACHMENT B

I, Dustin Doyle, am a Special Agent with the Federal Bureau of Investigation. I have knowledge about the facts set forth below from my involvement in the investigation, my review of reports, documents, pictures, videos, witness interviews, and discussions with other law enforcement officials. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact that I know concerning this investigation. All statements described herein are relayed in substance and in part. When dates and times are alleged herein, those dates and times are approximate.

1. The FBI has been investigating BULLARD and others regarding a scheme to launder fraudulently obtained funds that involves: (a) the compromise of a business email account used by a law firm in New Jersey (the "New Jersey Law Firm") to effectuate the fraudulent transfer of approximately $560,000 to a bank account controlled by BULLARD and then distributed to others; and (b) BULLARD's receipt of funds fraudulently obtained through loans issued as part of the COVID-19 Economic Injury Disaster Loan ("EIDL") program administered by the U.S. Small Business Administration ("SBA") to entities unrelated to BULLARD.

### *The New Jersey Law Firm Business Email Compromise*

2. In or around June 2020, Victim 1, a resident of Bergen County, New Jersey, communicated via email with the New Jersey Law Firm, which was advising Victim 1 on a real estate transaction. During the course of this email correspondence, an unknown person compromised an email account used by the New Jersey Law Firm. An unknown person, purporting to be emailing on behalf of the New Jersey Law Firm and in relation to the pending real estate transaction, then emailed fraudulent instructions to Victim 1 to wire approximately $560,000 to a bank account named "Eric's Commercial LLC" (the "Fraudulent Instructions").

3. On or about June 12, 2020, in reliance on the Fraudulent Instructions, Victim 1 wired approximately $560,000 (the "Fraud Wire") to a bank account opened in the name of "Eric Bullard, dba Eric's Commercial and Residential Property Management Group," with a listed address in California (the "Eric's Commercial Bank Account"), which is also BULLARD's state of residence. Victim 1 sent the Fraud Wire to the account believing that the New Jersey Law Firm had instructed her to do so as a part of the real estate transaction when, in fact, it was not.

4. BULLARD opened the Eric's Commercial Bank Account in or around January 2020 and was the sole signatory on the account. Prior to receiving the Fraud Wire, the Eric's Commercial Bank Account had a beginning statement period balance of approximately $40.

5. After Victim 1 initiated the Fraud Wire, the New Jersey Law Firm informed Victim 1 that the wire transfer instructions that prompted the Fraud Wire were not in fact sent from someone associated with the New Jersey Law Firm.

6. Later during on or about June 12, 2020—the same day that the Fraud Wire posted to the Eric's Commercial Bank Account—approximately ten cash withdrawals were made from the Eric's Commercial Bank Account totaling approximately $96,275. Surveillance footage obtained from the bank depicts a man who resembled BULLARD wearing a mask and entering a Bank 1 branch to make withdrawals from the Eric's Commercial Bank Account.

7. Also on that day, three large wire transfers totaling approximately $460,000 were made from the Eric's Commercial Bank Account to other bank accounts, including a bank account controlled by Co-Conspirator 1.

8. On or about June 15, 2020, the Eric's Commercial Bank Account received a deposit of approximately $77,780. The same day, three withdrawals totaling approximately $79,280 were made from the Eric's Commercial Bank Account. Approximately four days later, the Eric's Commercial Bank Account was closed.

**SBA Loan Fraud**

9. The same investigation has revealed that BULLARD and others conspired to launder the proceeds of fraudulently obtained COVID-19 disaster relief loans guaranteed by the SBA. The SBA was created in 1953 as an independent agency of the federal government to aid, counsel, assist, and protect the interests of small business concerns, to preserve free competitive enterprise, and to maintain and strengthen the overall economy of the United States.

10. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020, which is designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

11. The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the SBA to offer funding through the COVID-19 Economic Injury Disaster Loans ("EIDL") program to business owners negatively affected by the COVID-19 pandemic. More specifically, the EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

12. In order to obtain an EIDL, a qualifying business must submit an

application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period is that preceding January 31, 2020. The business entity must have existed in an operational condition on February 1, 2020.

13. Using the SBA online portal, EIDL applicants submit personal and business information in support of each EIDL application using a rapid intake application form. The EIDL loans requested minimal documentation and information from small businesses to process the loan for approval. The application includes a paragraph in which the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

14. EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above. The maximum loan amount is capped at $150,000 per entity.

15. Pursuant to the provisions governing the EIDL program, loan proceeds must be used by the receiving business on certain permissible expenses. More specifically, the EIDL funding may be used by the business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

*The Idaho Pharmacy Company SBA Loan*

16. On or about July 12, 2020, an EIDL application on behalf of a pharmacy company with a listed location in Idaho ("Application 1") was submitted to the SBA. The bank account listed on the rapid intake form for Application 1 was an unidentified bank account; however, the bank account that was later confirmed to receive the funds associated with the EIDL that resulted from Application 1 ("EIDL 1") was a business bank account purportedly associated with a property rental business and controlled by Co-Conspirator 1 (the "Co-Conspirator 1 Bank Account"). Co-Conspirator 1 is believed to reside in California.

17. On or about July 14, 2020, approximately $145,400 issued in connection with EIDL 1 was deposited into the Co-Conspirator 1 Bank Account.

18. On the following day, on or about July 15, 2020, two payments—each (a) in the amount of $11,970; (b) denoted as "Ides Payments;" and (c) issued to an individual other than Co-Conspirator 1, were deposited into the Co-Conspirator 1

Bank Account. Based on this investigation, I am aware that "Ides" is an abbreviation for and used by the Illinois Department of Employment Security. Based on my training and experience and this investigation, it appears that these deposits were issued as Illinois unemployment insurance benefits.

19. On or about July 16, 2020, two checks were written on the Co-Conspirator 1 Bank Account—one in the amount of $111,000 to another individual; and the other in the amount of $51,395 to "Eric's Commercial & Residential Property Management Group" ("Check 1"). Later that same day, on or about July 16, 2020, Check 1 was deposited into a bank account opened in the name of "Eric Bullard dba Eric's Commercial & Residential," with a listed address in Los Angeles, California (the "Eric's Commercial Bank Account 2").

20. On or about July 17, 2020, a check in the amount of $51,000 was deposited into the Co-Conspirator 1 Bank Account at an ATM in or around Inglewood, California. The check appears to have been signed by BULLARD.

*The Colorado Pharmacy Company SBA Loan*

21. On or about July 13, 2020, an EIDL application on behalf of a pharmacy company with a listed address in Colorado ("Application 2") was submitted to the SBA. The bank account listed on the rapid intake form for Application 2 was an unidentified bank account; however, the bank account that was later confirmed to receive the funds associated with the EIDL that resulted from Application 2 ("EIDL 2") was the Eric's Commercial Bank Account 2.

22. On or about July 13, 2020, approximately $143,100 issued in connection with EIDL 2 was deposited into the Eric's Commercial Bank Account 2.

23. On July 21, 2020, the $143,100 that originated with EIDL 2 was returned by the bank to the SBA. The transaction is listed on the Eric's Commercial Bank Account 2 bank statement as pertaining to fraud.

**BULLARD *Email Records Indicative of Fraud***

24. The customer email address listed in the bank records of associated with the Eric's Commercial Bank Account includes BULLARD's name (the "Bullard Email Account"). Law enforcement obtained records from the Bullard Email Account, which appears to be an account utilized by BULLARD and included the images described below:

    a. A folder dated 2020-06-12 contained (i) a photograph of BULLARD; and (ii) a photograph of a bank transaction receipt that appears to reflect three withdrawals, each slightly under $10,000, executed from a bank branch in Vermont;

   b. A folder dated 2020-07-20 contained a photograph of a stack of $100 bills, including a $10,000 band;

   c. A folder dated 2021-01-12#2 contained a photograph of a computer screen displaying a webpage from the SBA asking that the user verify his identity; and

   d. A folder dated 2021-01-20 contained what appeared to be a screenshot of an article explaining that Congress had approved a new round of SBA funding for EDIL loans.